**In re the Marriage of LeRoy W. BLED-SOE, Petitioner, Appellant,**

v.

**Frances J. BLEDSOE, Respondent.**

**No. C5–83–1577.**

Court of Appeals of Minnesota.

March 7, 1984.

William D. Wright, Rochester, for appellant.

Jeffrey B. Ring, Asst. County Atty., Albert Lea, for respondent.

Considered and decided by FOLEY, P.J., and WOZNIAK, and SEDGWICK, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

LeRoy Bledsoe appeals the trial court's refusal to forgive his liability for past due child support payments. On July 14, 1982, he moved to reduce his child support payments and cancel arrearages. At Mrs. Bledsoe's request, the hearing was continued until September. On September 7, 1982, the trial court denied his motion. On July 14, 1983, he made essentially the same motion to the trial court. Although the trial court lowered his child support payments, the trial court denied his request for forgiveness of the arrearages. This appeal is from that order. We affirm.

## FACTS

The marriage was dissolved on June 15, 1981. Respondent now lives in Minnesota; appellant Bledsoe resides in Iowa where he works for the Iowa School for the Deaf as a utility fireman. His take home pay is between $784 and $820 per month.

As part of the dissolution decree, he was required to pay $5,500 worth of marital debts and $450 per month to support his two children. Although he was unemployed at the time, the trial court ordered the child support based on his earning ability. He had just quit a job that paid $20,000 per year and the judge presumed he could find similar work. If similar work was not found, the trial court invited him to return and move the court for a modification of child support. He never made any child support payments while he was unemployed. His lien against some of the marital property was used to offset the payments from June through September and half of October of 1981.

Two months after the dissolution, in August of 1981, he filed for bankruptcy and received a full discharge. His obligation to support his children was not discharged. His obligation of $5,500 of marital debts assigned to him in the dissolution was, however, discharged. Since the creditors could not proceed against him, they have proceeded against respondent.

Bledsoe's unemployment ended in November of 1981 when he procured his present job with the Iowa School for the Deaf. Despite being employed, he never made any child support payments.

On May 24, 1982, he pleaded guilty to charges of theft. His five-year sentence was stayed on the condition that he make restitution of $15,000 he stole and serve 280 days in jail. His restitution payments were $350 per month. He had been paying only $150 per month. To continue his work at the School for the Deaf, he served the jail sentence in Iowa under a *Huber* work release. He was required to pay $42.00 per week to the county for his room and board. Although his living expenses were reduced, he made no child support payments.

On July 14, 1982, he moved for a reduction in his child support payments and for forgiveness of arrearages. The trial court denied his motion except that it reduced his required child support payments to $200 per month while accruing the remaining $250 per month as arrearages. Despite reduced payments, he made no child support payments.

On July 9, 1982, a Reciprocal Enforcement of Support Action was heard in Iowa. The Iowa court ordered him to pay child support, but reduced the amount to $200 per month. He refused to pay child support voluntarily. Iowa instituted income withholding in January, 1983. In January, $767.44 was withheld, and each month thereafter $225 was withheld.

The present action stems from his second motion to reduce his child support payments and for cancellation of arrearages. The trial court reduced the payments to $92 every other week, but refused to forgive the arrearages. On a cross motion, the court granted his ex-wife judgment for $7,215.45 of arrearages. Bledsoe appeals.

## ISSUES

1. Is the September 7, 1982 order denying Bledsoe's motion for forgiveness of child support arrearages *res judicata*?

2. Did the trial court abuse its discretion by not forgiving Bledsoe's arrearages?

## ANALYSIS

1. As a practical matter, the court could only forgive the arrearages from September 7, 1982 to the present. The September 7, 1982 order was *res judicata*.

■ An order denying a modification is appealable. *Plankers v. Plankers*, 173 Minn. 464, 217 N.W. 488 (1928). If the time for appeal passes, the order becomes final:

> Where there have been one or more previous decisions on motions for modification of a decree, the question whether there has been a substantial change in the circumstances of the parties is determined with respect to the period commencing with the date of the most recent order on a motion for a modification and not with respect to the time since the original decree .... The order made

preceding the one which is now before us not having been appealed from is *res judicata,* unless there has been, since that order was entered, a material change in the circumstances of the parties.

*Kiesow v. Kiesow,* 270 Minn. 374, 382, 133 N.W.2d 652, 659 (1965). "Where the right to appeal from an unvacated appealable order has expired the right of appeal is not revived by a negative order on a second motion for the same relief." *Bongard v. Bongard,* 342 N.W.2d 156, 158 (Minn.Ct. App.1983) (quoting *Barrett v. Smith,* 183 Minn. 431, 440, 237 N.W. 15, 19 (1931)).

■ In this matter, no appeal was taken from the September 7, 1982 order. The trial court expressly denied Bledsoe's motion to forgive the arrearages that accrued from the time of the decree until September, 1982. The September 7, 1982 order is therefore *res judicata.*

■ 2. Minnesota courts have statutory authority to modify child support decrees. A decree may be modified:

upon a showing of one or more of the following: (1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased need of a party; (3) receipt of assistance under sections 256.72 to 256.87; or (4) a change in the cost-of-living for either party as measured by the federal bureau of statistics, any of which makes the terms unreasonable and unfair. On a motion for modification of support, the court shall take into consideration the needs of the children and the financial circumstances of each party's spouse, if any. A modification which decreases support or maintenance may be made retroactive only upon a showing that any failure to pay in accord with the terms of the original order was not willful.

Minn.Stat. § 518.64(2) (1982) (as modified by Act of June 6, 1983, ch. 283, § 1, 1983 Minn.Laws 1204, 1204 (effective date June 7, 1983) and Act of June 9, 1983, ch. 308, § 22, 1983 Minn.Laws 1748, 1761 (effective date June 10, 1983)). The moving party has the burden of proof. *Johnson v. John-*

*son,* 304 Minn. 583, 584, 232 N.W.2d 204, 205 (1975). He must show 1) a substantial change in circumstances, and 2) that none of his past failures to pay were willful. The trial court has broad discretion, however, to grant or deny the motion and will not be reversed but for "an abuse of discretion in the sense that the order is arbitrary or unreasonable or without evidentiary support." *Smith v. Smith,* 282 Minn. 190, 193, 163 N.W.2d 852, 856 (1968); *see also, Michalson v. Michalson,* 263 Minn. 356, 359, 116 N.W.2d 545, 547 (1962); *Mansfield v. Mansfield,* 230 Minn. 574, 576, 42 N.W.2d 315, 317 (1950). The trial court's power to forgive arrearages should be exercised cautiously upon satisfactory evidence. *LeFebvre v. LeFebvre,* 305 Minn. 195, 200, 232 N.W.2d 786, 789 (1975) (forgiveness of past due alimony; when forgiving past due child support, where the interests of the children are paramount, the court should be even more cautious).

■ Bledsoe has a double burden of proof. He must also show that the trial court abused its discretion by finding that he had not carried his burden of showing forgiveness was proper. Abuse of discretion is claimed for a number of reasons. He claims that the payments were beyond his resources. The court looked at his circumstances, however, and lowered his payments, first temporarily and then permanently. Not even a partial payment was made.

■ He claims his failure to pay was never willful but forced upon him because his restitution obligations took priority over his child support obligations. His restitution obligation resulted from his own voluntary criminal actions. He admitted that he had not sent payments because of a personality clash with his ex-wife.

■ He made no support payments before the restitution started, nor when his living expenses were reduced while in jail, and has only been paying $150 per month on the restitution. In any event, child support payments take priority over restitution payments. *Cf. Smith v. Smith,* 282 Minn.

190, 163 N.W.2d 852 (1968) (welfare of the children is paramount concern).

Finally, Bledsoe claims an abuse of discretion because the court's order of September 14, 1983 is unrealistic and unreasonable. In the trial court's memorandum, the judge stated:

> the support orders were reasonable, even though hindsight may now indicate otherwise. I do not believe petitioner has been denied visitation, and I do not believe there are any other grounds for forgiveness.

He alleges that the trial court admitted that its past order did not live up to its duty to set support payment at a practical level to avoid future litigation. *LeFebvre v. LeFebvre*, 305 Minn. 195, 232 N.W.2d 786 (1975). The trial judge went to great lengths to explore the financial condition of the parties. He recognized that if Bledsoe could not fulfill his restitution obligations as well as his child support obligations, he could go to jail and all would lose. To prevent this, the judge slashed his support obligation. Nonetheless, the judge felt that Bledsoe had not met his burden of showing that he deserved forgiveness.

Faced with a man who has never made a voluntary support payment, claimed inability to pay because of his criminal acts, and admits that he has not paid because of a personality clash with his ex-wife, the trial court was well within its discretion to deny forgiveness for arrearages.

## DECISION

The trial court did not abuse its discretion by refusing to forgive Bledsoe's child support arrearages. Until September 7, 1982, the earlier order denying forgiveness of those arrearages was *res judicata.* Since his failure to pay was willful, denying forgiveness was proper.

Respondent is awarded $400.00 in attorney's fees.

Affirmed.